IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| AT&T Corp., | ) | |
| | ) | |
|     *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 18-CV-00119-DGK |
| | ) | |
| Missouri Network Alliance, LLC | ) | |
| | ) | |
|     *Defendant.* | ) | |

**AT&T CORP.'S MOTION FOR PRIMARY JURISDICTION REFERRAL AND STAY AND SUGGESTIONS IN SUPPORT**

Plaintiff AT&T Corp. ("AT&T") hereby moves for a stay and a primary jurisdiction referral to the Federal Communications Commission ("FCC") with regard to the issues of federal law in this case, which are subject to the FCC's rules and which require the FCC's technical expertise.

A stay and referral is warranted because the FCC's determinations on referral will likely resolve most of AT&T's claims and the counterclaims asserted by Defendant Missouri Network Alliance, LLC ("MNA"). Further, the Court has already issued a primary jurisdiction referral and stay in a related and virtually identical case, *Sprint Communications Co. v. Missouri Network Alliance*, Case No. 4:17-cv-00597-DGK (W.D. Mo.) ("*Sprint v. MNA*"), and should do likewise in this similarly situated case to avoid the risk of inconsistent decisions.[1]

---

[1] AT&T also believes that it would conserve the resource of the Court and the parties if the procedural and other deadlines in this case are stayed pending the Court's consideration of AT&T's referral motion. If the Court refers and stays this case, then there is no need for the Court to enter a schedule and issue other procedural rulings. AT&T expects to separately file a motion seeking relief, and it is hopeful that MNA will consent to that motion.

## BACKGROUND

This is a dispute between AT&T and MNA about whether the rates MNA charged AT&T for MNA's telecommunications services are lawful under rules of the FCC. Because the disputed rates are subject to a complex set of rules promulgated by the FCC, the FCC's expertise is useful, and the Court should invoke the primary jurisdiction doctrine. *See infra* (discussing precedents applying the doctrine).

Specifically, this case involves the FCC's intercarrier compensation regime, which refers to the system of fees that telecommunications carriers pay to originate, transport, and terminate traffic on another carrier's network. These fees include "access charges," which interexchange carriers (such as AT&T) often purchase from local carriers (such as MNA) to provide long-distance telephone service to business and residential customers. Access charges generally can be set forth either in express, negotiated agreements, or in local carriers' "tariffs." Carriers can file tariffs, subject to governing law, with the FCC for *inter*state access charges (*i.e.*, for calls that begin in one state and end in another state) and with state regulators for *intra*state access charges. Here, MNA filed an interstate tariff with the FCC and an intrastate tariff with the Missouri Public Service Commission and has charged AT&T for services provided pursuant to those tariffs.

The FCC has taken a series of steps intended to regulate intercarrier compensation fees, particularly access charges. The FCC has long regulated the access services of incumbent local exchange carriers, like AT&T Missouri. *See, e.g.*, *Qwest Commc'ns Co. v. N. Valley Commc'ns, LLC*, 26 FCC Rcd. 8332, ¶ 5 (2011), *aff'd*, *N. Valley Commc'ns, LLC v. FCC*, 717 F.3d 1017, 1019 (D.C. Cir. 2013). Beginning around 1996, new local carriers known as competitive local exchange carriers ("CLECs") began to offer local telephone service in competition with incumbent carriers, and in 2001, the FCC also began regulating the access services provided by

CLECs.  *See id.* ¶ 6.  The FCC adopted rules capping the interstate access charges that CLECs could assess interexchange carriers under their interstate tariffs.  *See* Seventh Report and Order, *Reform of Access Charges Imposed by Competitive Local Exchange Carriers*, 16 FCC Rcd. 9923 (2001); Eighth Report and Order, *Reform of Access Charges Imposed by Competitive Local Exchange Carriers*, 19 FCC Rcd. 9108 (2004) (collectively, "*CLEC Benchmarking Orders*").  The cap was based on a "benchmark" rate charged by the relevant incumbent carrier.  *N. Valley Comm'cns*, 26 FCC Rcd. 8332, ¶ 6.  Under the FCC's rules, a CLEC could not lawfully file a tariff for access services with a rate above the FCC-specified benchmark rate; the only way a CLEC could recover an above-benchmark rate was via an express, negotiated contract.  *See, e.g.*, *id*. ¶ 11.

More recently, in November 2011, the FCC adopted sweeping changes to its entire intercarrier compensation regime, which, among other things, established new rules requiring local exchange carriers to adjust, over a period of years, many of their interstate and intrastate access charges, eventually transitioning to a "bill-and-keep" regime (when bill and keep is implemented, carriers will not file access tariffs, but generally must recover their costs from their end user customers).  *See Connect Am. Fund*, 26 FCC Rcd. 17663, ¶¶ 736-59 (2011) ("*USF/ICC Transformation Order*"), *aff'd*, *In re FCC 11-161*, 753 F.3d 1015 (10th Cir. 2014).  As part of the 2011 rule changes, the FCC exerted authority over *intra*state access charges, setting rules that required certain intrastate access charges to be reduced over time so that they do not exceed interstate access charges.  *See id.* ¶ 801; *In re FCC 11-161*, 753 F.3d at 1119-24 (Bacharach, J., concurring in part and dissenting in part) (2011 FCC rules pre-empted intrastate access charges that were not consistent with FCC rules).

3

The present dispute centers on the validity of the access charges that MNA has billed AT&T under its interstate and intrastate tariffs. In its complaint, AT&T challenges the lawfulness of these charges, alleging that MNA's interstate and intrastate tariffs fail to comply with the FCC's rules governing access charges. MNA intends to deny that it is subject to or has otherwise violated these rules and has asserted counterclaims against AT&T for non-payment of MNA's tariffed access charges. This same situation (though involving a different plaintiff) is set forth in the related case, *Sprint v. MNA*, for which this Court recently issued a primary jurisdiction referral and stay.[2]

## DISCUSSION

Under the primary jurisdiction doctrine, the Court should refer to the FCC the federal issues in this case regarding the proper application of the FCC's rules. The primary jurisdiction doctrine applies "whenever enforcement of the claim [before the Court] requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).

---

[2] AT&T elected to bring its complaint in this federal district court, rather than initially with the FCC, because this Court can exercise subject matter jurisdiction over both AT&T's federal claims as well as its state-law claims against MNA. The FCC lacks jurisdiction to adjudicate claims arising under state law, such as Count IV of AT&T's complaint. *See All Am. Tel. Co. v. FCC*, 867 F.3d 81, 94 (D.C. Cir. 2017). However, as noted above, in its 2011 rules, the FCC began regulating the rates of certain intrastate access services, and a referral to the FCC would address whether MNA's state-law intrastate access charges comply with the FCC's 2011 rules. Accordingly, most, if not all, of the issues in this case, including any questions about MNA's state charges, are ultimately governed by the FCC rules. As such, for the reasons explained herein, referral of the whole case to the extent of the FCC's jurisdiction, along with a stay while the primary jurisdiction referral is pending, is the appropriate course of action here. After the referral, AT&T expects that the parties would return to Court and seek final judgment based on the FCC's determinations.

The doctrine of primary jurisdiction "is utilized to coordinate judicial and administrative decision making," and "allows a district court to refer a matter to the appropriate administrative agency for a ruling in the first instance, even when the matter is initially cognizable by the district court." *Access Telecomms. v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998) (citing *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 476 (8th Cir. 1988) and *Iowa Beef Processors, Inc. v. Ill. Cent. Gulf R.R. Co.*, 685 F.2d 255, 259 (8th Cir. 1982)); *see also Atlantis Express, Inc. v. Standard Transp. Servs., Inc.*, 955 F.2d 529, 535 (8th Cir. 1992) (finding that "complex" issues, the resolution of which requires the "interpretation of an ambiguous regulation and expert knowledge," are appropriate for primary jurisdiction referral).

Here, the parties' dispute centers on the access charge rules promulgated and administered by the FCC. Resolution of this dispute will require interpreting the scope and applicability of the FCC's regulations (*i.e.*, Part 61 of Title 47 of the Code of Federal Regulations), the FCC's *CLEC Benchmarking Orders*, the FCC's *USF/ICC Transformation Order*, as well as FCC decisions applying these rules. *See, e.g.*, *AT&T Servs. Inc. v. Great Lakes Comnet, Inc.*, 30 FCC Rcd. 2586 (2015), *review denied in part, granted in part, Great Lakes Comnet, Inc. v. FCC*, 823 F.3d 998 (D.C. Cir. 2016). These matters fall squarely within the expertise of the FCC, which makes a primary jurisdiction referral particularly appropriate here. *See, e.g.*, *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005) (noting that primary jurisdiction referral permits "the use of agency expertise 'in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion'") (quoting *Far E. Conference v. United States*, 342 U.S. 570, 574 (1952)); *Sprint Spectrum L.P. v. AT&T Corp.*, 168 F. Supp. 2d 1095, 1101 (W.D. Mo. 2001) (referring issues regarding applicability of access charges to the FCC under primary jurisdiction doctrine "as they

involve matters within the agency's special expertise and which require a uniform national resolution"); *Iowa Network Servs., Inc. v. AT&T Corp.*, No. 14-cv-03439, 2015 U.S. Dist. LEXIS 139968, at *20 (D.N.J. Oct. 14, 2015) ("Ordinarily, primary jurisdiction 'comes into play whenever enforcement of a claim requires the resolution of issues which under a regulatory scheme have been placed within the special competence of an administrative body'") (quoting *James v. Global Tel\*Link Corp.,* No. 13-4989-WJM-MF, 2014 U.S. Dist. LEXIS 124708, at *4 (D.N.J. Sept. 8, 2014)).

Furthermore, as noted above, AT&T and MNA are not the only telecommunications carriers currently embroiled in a dispute about the proper interpretation of the FCC's rules at issue here. Indeed, also pending before this Court is a proceeding involving MNA and another interexchange carrier (Sprint). *See Sprint v. MNA*. This Court already referred issues to the FCC in that case, and there would be a risk of inconsistent decisions if the Court were to proceed to decide issues in this case virtually identical to those that it already referred to the FCC. Granting the referral to the FCC will ensure a "uniform national resolution" of these issues, which is consistent with the purposes of the primary jurisdiction doctrine. *See Alpharma*, 411 F.3d at 938 ("Among the reasons and purposes served [by the primary jurisdiction doctrine] are the promotion of consistency and uniformity within the areas of regulation…."); *Sprint Spectrum*, 168 F. Supp. 2d at 1101 (granting primary jurisdiction referral of access fee issues that "require a uniform national resolution").

In addition to interpreting FCC rules, resolution of the parties' dispute also will require interpreting technical aspects of MNA's interstate and intrastate tariffs, an understanding of the services provided by MNA pursuant to those tariffs, and whether those tariffs comply with federal law. Tariff documents are hundreds of pages long and include detailed technical

6

Case 4:18-cv-00119-DGK   Document 10   Filed 06/04/18   Page 6 of 10

discussions of the services provided and the rates charged. The FCC is uniquely familiar with those types of documents and the tariffed services implicated by the parties' dispute, which further supports a primary jurisdiction referral. *See CenturyTel of Mo., LLC v. Mo. Pub. Serv. Comm'n*, No. 08-4106-CV-C-NKL, 2009 WL 82066, at *7–8 (W.D. Mo. Jan. 12, 2009) (finding referral to FCC appropriate when issues are "technical in nature" and require "considerations of technologies"); *Sancom, Inc. v. AT&T Corp.*, 696 F. Supp. 2d 1030, 1037 (D.S.D. 2010) ("where the interpretation of the tariff requires interpretation of technical terms or specialized knowledge, referral under the primary jurisdiction is appropriate").

Finally, it was initially AT&T's understanding that MNA would agree to refer this case to the FCC—which is a sensible result because the *Sprint v. MNA* case was referred based primarily on agreement of the parties in that case. AT&T accordingly proposed a joint motion for primary jurisdiction referral and stay. However, MNA declined to join and has notified AT&T that it intends to oppose this motion. In its communications with AT&T, MNA has asserted three reasons for its refusal to join this motion: (1) the *Sprint v. MNA* case is too far along at the FCC; (2) MNA does not believe there is a procedural mechanism under FCC rules for combining the *Sprint v. MNA* case with this case before the FCC; and (3) MNA does not find value or reason in having two separate referrals for the *Sprint v. MNA* case and this case.

MNA's first reason is without merit. The *Sprint v. MNA* case was just referred on May 1, 2018, and Sprint has not yet filed anything with the FCC to implement the referral. It is AT&T's understanding that Sprint and MNA are still engaged in discussions with the FCC regarding the proper procedures for implementing the referral order. Moreover, Sprint has indicated to AT&T that it would prefer to move forward at the FCC in tandem with AT&T's case. Further, because of the FCC's procedural rules—which (unlike federal district court practice) require a complaint

7

to contain factual evidence and documentation supporting the complaint (47 C.F.R. § 1.720)—it will likely take a few months before a complaint can be filed in the *Sprint* case.

The second assertion also has no merit. FCC regulations clearly permit combining related cases. *See* 47 C.F.R. § 1.723(a) ("Two or more complainants may join in one complaint if their respective causes of action are against the same defendant and concern substantially the same facts and alleged violation of the Communications Act.").

MNA's third reason also fails. If the Court does not refer this case and it proceeds forward, then there is a serious risk of inconsistent decisions, which the primary jurisdiction doctrine is meant to avoid. *See supra* (citing cases). MNA argues that the Court should simply stay and not refer this case, but that result would be inappropriate. If this case were stayed but not referred, and the *Sprint v. MNA* case proceeds at the FCC, then AT&T would have no practical opportunity to present its case *either* at the FCC or before this Court. Absent a referral, AT&T's ability to join or participate in the *Sprint v. MNA* case could be limited. *See* 47 U.S.C. § 207 (absent a referral, a party may not file a complaint on the same issues at the FCC and in district court). At the same time, once the FCC issues a decision in the *Sprint v. MNA* referral proceedings, the FCC's decision would likely be applied by the Court to control AT&T's dispute with MNA here. *See All American*, 867 F.3d at 93 (district courts are normally bound by rulings made by the agency on referral). Sprint's efforts before the FCC cannot substitute for AT&T's right to litigate its own case in its own way.

In short, AT&T should not be stripped of its interest to litigate its own case. AT&T requests a stay, but *only if* the Court refers this case to the FCC. If the case is not referred, AT&T wishes to move forward with its own case before this Court. AT&T should not be

8
Case 4:18-cv-00119-DGK   Document 10   Filed 06/04/18   Page 8 of 10

relegated to a paralyzed position in which it must submit and rely upon the arguments made by Sprint before the FCC, because Sprint does not represent AT&T.

Accordingly, AT&T respectfully asks the Court to treat this case in the same way as it handled the *Sprint v. MNA* case: to refer the federal issues to the FCC, and stay the proceedings.[3] If no referral is ordered, then this case should proceed in this Court.

## CONCLUSION

For the reasons set forth above, the Court should: (1) refer to the FCC under the primary jurisdiction doctrine all issues within the FCC's jurisdiction, including the proper application of the FCC's rules to the dispute and the proper interpretation of the tariffs at issue; and (2) stay this case pending resolution of that referral.

Dated: June 4, 2018

/s/ Stephen M. Bledsoe
Stephen M. Bledsoe, MO Bar 47048
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone: (816) 561-7007
Facsimile: (816) 561-1888
Email: sbledsoe@berkowitzoliver.com

*Attorney for Plaintiff AT&T Corp.*

---

[3] If the Court refers issues to the FCC, a stay, rather than dismissal, is appropriate to avoid running of the statute of limitations. *See Reiter v. Cooper*, 507 U.S. 258, 268 (1993) (explaining that, when referring an issue based on primary jurisdiction, the court "stay[s] further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling"); *Great Lakes Commc'ns Corp. v. AT&T Corp.*, No. 13-cv-4117, 2015 WL 3948764, at *3 (N.D. Iowa June 29, 2015) (because there was "some possibility that the statute of limitations could run on a party's claim, while the FCC considers the regulatory issues, if that claim was dismissed," a stay was warranted). After the referral, AT&T expects that the parties would return to Court and seek final judgment based on the FCC's determinations.

## **CERTIFICATE OF SERVICE**

I certify that on this 4th day of June, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system that will send a notice of electronic filing to all counsel of record.

/s/ Stephen M. Bledsoe
*Attorney for Plaintiff AT&T Corp.*